*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0232P (6th Cir.)
File Name: 02a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BETTY WEIGEL,
    *Plaintiff-Appellant,*

    *v.*

BAPTIST HOSPITAL OF EAST
TENNESSEE,
    *Defendant-Appellee.*

No. 00-6611

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00286—James H. Jarvis, District Judge.

Argued: April 24, 2002

Decided and Filed: July 15, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
SIMPSON, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stephen Talbert Hyder, Maryville, Tennessee, for Appellant. Penny A. Arning, KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, for

---

[*] The Honorable Charles R. Simpson III, United States District Judge for the Western District of Kentucky, sitting by designation.

1

Appellee. **ON BRIEF:** Stephen Talbert Hyder, Maryville, Tennessee, for Appellant. Penny A. Arning, John B. Rayson, KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, for Appellee.

———————————

### OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Betty Weigel appeals the district court's grant of summary judgment to Defendant-Appellee Baptist Hospital of East Tennessee ("BHET"). Weigel's suit alleged that BHET violated the Age Discrimination in Employment Act ("ADEA") by: (1) discriminating against her on the basis of her age in the terms and conditions of her employment while she worked as a nurse at BHET; (2) refusing to rehire her following her resignation on the basis of her age; and (3) refusing to rehire her in retaliation for her earlier complaints concerning age-based discrimination at BHET. The district court concluded that: (1) Weigel's claims relating to discrimination at BHET arising before her resignation were time-barred; (2) Weigel could not show that BHET's nondiscriminatory reasons for not rehiring her were pretextual; and (3) Weigel had not established a prima facie case of retaliation based upon BHET's refusal to rehire her because she could not show a causal connection between her protected conduct and BHET's adverse hiring decision. For the reasons stated below, we **AFFIRM** the district court's decision.

### I. FACTS AND PROCEDURE

#### A. Weigel's Employment at BHET

Weigel was hired as a nurse by BHET in 1994. At that time, Weigel was fifty-six years old. For most of her tenure at BHET, Weigel worked in the Birthing Center at BHET's Knoxville hospital. Weigel's work records reveal that she had recurring attendance problems and exhibited some

Ensworth's role in the decision making process was limited to his suggestion to Bowers that she review Weigel's personnel file before offering Weigel a job. There is no evidence that Ensworth singled out Weigel's discrimination complaints as a factor that Bowers should consider. Ensworth did not otherwise participate in the deliberations between Bowers, Collins, and Herrin concerning Weigel's application. Therefore, the fact that Ensworth personally believed that Weigel's discrimination complaints weighed against rehiring her does not constitute direct evidence of discrimination unless Weigel can show that Ensworth's views influenced, or at least were communicated to, the relevant decision makers. Weigel has made no such showing. Based upon the record before us, it appears that the only time Ensworth ever expressed his views about Weigel's discrimination complaints was during his deposition, which obviously occurred long after Weigel was denied employment at BHET.

In sum, we conclude that Weigel has not presented sufficient direct evidence of retaliatory motive to withstand summary judgment. Since we have already determined that Weigel cannot maintain a circumstantial case of retaliation due to her inability to show pretext, we therefore affirm the district court's dismissal of the plaintiff's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to BHET as to all claims asserted by the plaintiff.

make sure that the selection process included a review of her time limits [sic].

J.A. at 257.  In his deposition, Ensworth admitted that Weigel's statements relating to age discrimination contributed to his feeling that she should not be hired:

Q:   The fact that Ms. Weigel used these words: "Younger RN returned with full-time day position made available for her" made an impression with you?

[Ensworth]:  The whole thing, the negativity of the whole thing made an impression.  The fact that she said she was leaving under the advice of an attorney certainly leaves an impression.
. . . .
Q:  . . . . Then she says: "Reason for separation:  Have voiced concerns of department with present and past presidents of nursing, nurse manager, without any positive response.  Nurse manager and president of nursing have copies of discriminatory acts over the past two years with favoritism to younger staff."  Now was that negative?

[Ensworth]:  Those are remarks of a very disgruntled employee.  Yes, those are negative comments.

J.A. at 265, 267.  BHET argues, however, that Ensworth was not a decision maker, and therefore evidence of retaliatory animus on Ensworth's part is not direct evidence that the adverse action was taken because of retaliatory motives.

We conclude that Ensworth's deposition comments do not constitute direct evidence of retaliation.  When determining whether proffered evidence constitutes direct evidence of discrimination, we consider whether the evidence, if believed, compels the conclusion that retaliatory animus played a part in the challenged decision.  *Jacklyn*, 176 F.3d at 926. Ensworth's deposition testimony demonstrates only that *he* reacted negatively to Weigel's complaints about age discrimination.  The undisputed facts, however, show that

difficulty cooperating with superiors and coworkers. Weigel's performance evaluations marked "Performance Improvement Required" in the area of "Attendance & Punctuality," indicating that Weigel's "levels of performance are less than job standards" in this area.  Joint Appendix ("J.A.") at 132-33, 142-43, 150-51, 156-57 (Performance Evaluations).  Weigel received a number of oral and written warnings and one three-day suspension for absenteeism while at BHET.  Weigel's employment records also indicated that she received negative marks for refusing to perform duties as a "charge nurse" and "preceptor."

According to Weigel, her supervisors at BHET made work assignments and disciplinary decisions in a manner that discriminated against older nurses.  Weigel claims that older, more experienced nurses were required to assume more work responsibilities than younger nurses.  Weigel contends that younger nurses received more favorable treatment than older nurses when they asked to leave work for medical- or family-related reasons.  Weigel also contends that she was unfairly disciplined for absences from work while younger nurses received no disciplinary action for similar instances of absenteeism.

Weigel never filed a formal grievance relating to her complaints about discrimination and unfair treatment. However, she did voice her concerns to her superiors on a number of occasions.  On May 17, 1996, she met with Frank Ensworth in BHET's Human Resources Department to discuss her claims of unfair treatment.  Weigel's notes state that she also met with Donna Herrin, President of Nursing, on November 25, 1997, concerning her complaints.

On April 30, 1998, Weigel resigned from her position at BHET without giving the hospital two-weeks notice as required by BHET policy.  According to hospital policy, Weigel's failure to provide the requisite two-weeks notice rendered her ineligible for rehire at BHET.  J.A. at 177 (Baptist Health System Employee Handbook at 40) ("All employees are requested to give a notice of two (2) weeks. . . .

Employees failing to give proper notice will not be eligible for rehire."). In his affidavit, J. Scott Shaffer, Vice President of Human Resources, explained that only he and Herrin possess the authority to waive the policy and rehire a former employee who had resigned without notice. Shaffer stated that the policy is "rarely waived" and "[w]hen it is waived, it is almost always for an applicant who has a critical skill, not otherwise readily available." J.A. at 412.

Upon her departure from BHET, Weigel completed an exit questionnaire. On the questionnaire, she marked four areas as "satisfied," including "Relationship with Coworkers," "Department Orientation," "Ability to Influence Work Area," and "Opportunities for Promotion." She marked the remaining ten categories as "unsatisfied." In response to a question asking whether she would be willing to remain at BHET under a more favorable arrangement, Weigel marked "no." She also wrote a number of comments on the questionnaire expressing her complaints about BHET, including those relating to age discrimination. Weigel's comments included the following:

2 [Benefits] — Have been nurse (RN) for almost 40 years, never have worked at place you were penalized for using benefits.
3 [Hours] — Was "bumped" to [night shift] 7P-7A when stepped down to part-time position — younger RN returned with [full time] day position made available to her.
. . . .
8 [Relationship with Manager] — Manager was partial to younger staff (Recruited and hired younger employees[)].
11 [Staff Training Opportunities] — Majority of staff not competent in all areas as job description implies, ex, OR-scrubbing tech, etc.

J.A. at 124 (Exit Questionnaire). On the questionnaire, Weigel explained her "[r]eason for separation" as follows:

We agree with BHET that the affidavit statements of Herrin and Bowers do not constitute direct evidence of discrimination. It is well established that isolated and ambiguous comments are not sufficient to make out a direct-evidence case of employment discrimination. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993). Weigel's exit questionnaire was extremely negative and criticized BHET on a number of fronts. Weigel indicated that she would not consider remaining at the hospital, even under improved circumstances. She indicated that she was not satisfied with BHET in ten out of the fourteen categories identified on the exit questionnaire. A number of Weigel's comments expressed complaints that did not relate to age discrimination in any way, including her opinion that she was "penalized for using benefits" and her belief that the "[m]ajority of [the] staff [was] not competent in all areas [of the] job description." J.A. at 124 (exit questionnaire). Neither Bowers nor Herrin singled out Weigel's age discrimination complaints in the questionnaire as a specific factor weighing in their decision not to hire her. Therefore, a fact finder is left to infer that they were referring to Weigel's age discrimination charges, rather than her overall dissatisfaction with BHET. The fact that Weigel was dissatisfied with nearly every aspect of her employment at BHET is certainly a legitimate reason not to ask her to return. In the absence of evidence showing that Herrin and Bowers were referring specifically to Weigel's age-discrimination complaints, we do not find their statements to be direct evidence of retaliatory motive.

Weigel also presents the deposition testimony of Frank Ensworth to support her direct evidence claim. Ensworth testified that he told Bowers to be sure to review Weigel's file before making an offer of employment. He explained his reason for doing so was that

[Weigel] left suddenly without giving notice. And shortly afterwards, she mailed back to us an exit questionnaire that I had looked at and placed in her file. And I had remembered those things and I wanted to

therefore, Weigel has not carried her burden of demonstrating that BHET's nondiscriminatory explanations are pretextual.

### 3.  Direct Evidence

Alternatively, Weigel contends that she has shown direct evidence of retaliatory motive, insofar as Bowers, Herrin, and Ensworth all cited Weigel's comments on her exit questionnaire as a factor in deciding not to hire her. "It is well settled that if a plaintiff presents direct evidence of discrimination, she need not proceed under the *McDonnell Douglas* formula." *Christopher*, 936 F.2d at 879. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). In contrast to purely circumstantial cases of retaliation, an employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Whether Weigel has presented direct evidence of retaliation is a close question. Bowers and Herrin both explicitly identified "the nature of Ms. Weigel's comments on the exit questionnaire" as a reason for their decision. J.A. at 166 (Bowers Aff. at 4); J.A. at 189 (Herrin Aff. at 2). This evidence is direct as to causation insofar as the key decision makers admit that the comments were a motivating factor in their decision. BHET responds, however, that some of the comments on Weigel's questionnaire were not related to her complaints about age discrimination. BHET contends that the statements in Bowers's and Herrin's affidavits are therefore ambiguous, since "Ms. Weigel's comments" could refer to her complaints about age discrimination, her complaints not related to age discrimination, or a combination of the two.

Had voiced concerns . . . with present and past Presidents of Nursing, Nurse Manager without any positive response. Nurse Manager and President of Nursing have copies of discriminatory acts over past 2 years with favoritism to younger staff.
Was advised by legal counsel (attorney) to terminate employment with ETBH because of lack of response from administration and for my "self preservation."

J.A. at 125. Weigel also noted her suggestions for improving BHET, including ensuring that "[p]ay reflects years of experience," hiring "qualified management with 'people' skills" who can "communicate with people in [an] impartial way," and "enabling the staff to use benefits." J.A. at 125.

### B.  Weigel's Application for Rehire at BHET

Despite her negative experiences at BHET, Weigel decided to reapply for employment as a PRN nurse in BHET's Birthing Center in December of 1998. PRN nurses provide "as needed" services and are used to fill temporary gaps in staffing. Weigel asserts that she discussed returning to work at BHET with Dr. Greg Glover, the Director of Obstetrics. Weigel testified in her deposition that Dr. Glover told her that Herrin had informed him that Weigel would be eligible for rehire despite her failure to give two-weeks notice prior to her resignation. In her affidavit, Herrin admitted that Dr. Glover recommended Weigel for rehire, but denied ever approving Weigel's eligibility for rehire.

On December 29, 1998, Weigel met with Deana Bowers, the interim Nurse Manager of the Birthing Center at BHET, to discuss Weigel's return to work at the hospital. What transpired at the meeting is disputed. Weigel believes that she informed Bowers about her failure to give two-weeks notice prior to her resignation from BHET and that "it was brought up that I would not have come back for an interview unless I had known that I was eligible for re-hire." J.A. at 95 (Weigel Dep. at 51). Weigel claims that Bowers offered her a position at BHET during the meeting, and told Weigel that "Baptist

would be happy to have [Weigel] back in their employment, in their obstetrical unit." J.A. at 91 (Weigel Dep. at 35). Weigel did not speak with anyone from Human Resources at that meeting and did not complete an employment application at that time.

Bowers denies making Weigel an offer of employment at the December 29 meeting. In her affidavit, Bowers stated that she "make[s] it a point to tell applicants that I do not have authority to make a job offer." J.A. at 165 (Bowers Aff. at 3). She further explained that "Human Resources made such offers pending the results of a pre-employment physical and drug screen, after checking the references on the applicant's application form, and, in the case of former employees, reviewing the employee's personnel file." J.A. at 165.

On January 8, 1999, Weigel again met with Bowers and submitted her completed application. According to Weigel, Bowers told her that her orientation would start the next week. Weigel also contends that after she left Bowers's office, Bowers announced to several staff members who were standing nearby that Weigel would be returning to work at BHET. Bowers admits that when she took Weigel's application to the Human Resources department on that day, she recommended that Weigel be offered a job. Bowers contends, however, that "at the time [she] made this recommendation, . . . [she] had no knowledge of Ms. Weigel's work record at BHET or of any of the problems she had had." J.A. at 165.

On January 8, 1999, the same day that Weigel submitted her completed application, Bowers interviewed another candidate, Pam White, for a PRN nurse position in the Birthing Center. White was forty-two years old at the time of her interview. White was hired by BHET on February 2, 1999.

On January 19 and 26, 1999, Weigel called and left telephone messages for Bowers requesting information about her employment. On February 3, 1999, Weigel spoke with Bowers on the telephone. Bowers told Weigel that the

employment action towards the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Id.* "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The parties do not dispute that Weigel has shown the first three elements of her claim. The only dispute is whether Weigel has shown causation. To show causation, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken" in the absence of the protected conduct. *Id.* Although no one consideration is dispositive, "[a] causal link may be shown through knowledge combined with closeness in time." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000).

Based upon these principles, we conclude that the district court erred in finding that Weigel had failed to establish a prima facie case of causation. The record shows that the decision to reject Weigel's application was made shortly after the key decision makers became aware of Weigel's previous complaints about age discrimination as a result of their review of Weigel's personnel file. Moreover, both Bowers and Herrin identified the nature of Weigel's comments on the exit questionnaire, some of which related to age discrimination, as a factor influencing their decision. Thus, in addition to temporal connection and knowledge, the plaintiff has shown that the decision makers specifically considered the exit questionnaire, which contained complaints about discrimination, in reaching their decision. These facts are sufficient to establish a prima facie case of causation.

We nevertheless determine that BHET is entitled to summary judgment on Weigel's circumstantial retaliation claim. As noted above, Weigel has not shown a genuine issue of material fact concerning the validity of BHET's explanation that Weigel was not rehired because of her chronic absenteeism and failure to give the required two-weeks notice prior to resigning from her previous position at the hospital. Under the *McDonnell Douglas* framework,

the higher paying jobs. This fact, we concluded, could reasonably be expected to lead the EEOC to investigate why different job designations that required the same qualifications and responsibilities used disparate pay scales. *Id.* Accordingly, we have previously suggested that under the scope of investigation test, "retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999).

Applying the expected scope of investigation test, we conclude that Weigel's retaliation claim should be allowed to go forward. The facts supporting Weigel's retaliation claim emerged from the nondiscriminatory explanation advanced by BHET for its refusal to rehire her. Since the employer's articulation of its nondiscriminatory reasons for taking a challenged adverse employment action is an essential step in any discrimination investigation, this claim clearly seems to be within the scope of any EEOC investigation expected to grow out of Weigel's discriminatory hiring claim. Moreover, Weigel's EEOC charge included facts relating both to BHET's refusal to rehire Weigel and to the allegedly discriminatory treatment she received while previously employed at BHET. It seems logical that any investigation resulting from Weigel's EEOC charge would explore whether there was a relationship between her earlier complaints of discrimination and her subsequent claims of discriminatory hiring.

### 2. Circumstantial Case of Retaliation

We next turn to the merits of Weigel's retaliation claim. In the absence of direct evidence, retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework. *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir.), *cert. denied*, 502 U.S. 1013 (1991). In order to establish a prima facie case of retaliation, the plaintiff must show: (1) that the plaintiff engaged in a protected activity; (2) that the defendant had knowledge of the plaintiff's protected conduct; (3) that the defendant took an adverse

hospital did not have a position at that time because Herrin had placed a "freeze" on hiring due to a projected low patient census for the early part of 1999.

Subsequently, BHET has asserted other reasons, in addition to the low patient census, for its decision not to rehire Weigel. In her affidavit, Bowers stated that she encountered Frank Ensworth shortly after taking Weigel's application to Human Resources. Ensworth suggested that Bowers review Weigel's personnel file before offering her a position, because Weigel had not left on positive terms. After reviewing the file, Bowers asked her supervisor, Brenda Collins, to review the file as well. Collins and Bowers discussed the contents of the file with Herrin, and the three collectively decided not to offer Weigel a job at that time. According to Bowers, the decision was "based upon several factors," including:

> Ms. Weigel's attendance record, her attitude problem and lack of teamwork with her co-workers in the Birthing Center (several nurses expressed to me the opinion that Ms. Weigel should not be rehired: Amy Watson, Penny McNutt and Julie Palmer), the nature of Ms. Weigel's comments on the exit questionnaire, her resignation without notice, and the fact that there was then a very low census in the Birthing Center. . . . Age was not a factor in our decision.

J.A. at 166 (Bowers Aff. at 4).

Ensworth's affidavit discusses the hiring process at BHET. In his affidavit, Ensworth explained that "[t]he Human Resources department is responsible for overseeing the hiring process at BHET." J.A. at 171. According to Ensworth, the normal process is for an applicant to be reviewed initially by the managers of the department in which the job opening exists, who then make recommendations to Human Resources. Ensworth claims that "[a]t the time Ms. Weigel applied for a PRN position only the Human Resources Department made job offers on behalf of BHET." J.A. at 171.

## C. Legal Proceedings

On February 25, 1999, Weigel met with Attorney Stephen T. Hyder, her counsel in the instant appeal, to discuss her legal rights. This was the last full work day before March 1, 1999, which was the 300th day after Weigel had resigned from her position at BHET. This date is significant because under 29 U.S.C. § 626(d)(2), a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of a discriminatory act, or any claims arising from that act will be dismissed as untimely. *See Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987). Hyder, however, was in the midst of trial preparation and could not meet with Weigel again until March 5, 1999. On that day, Hyder drafted an EEOC charge, had Weigel sign it, and mailed it. The charge was received by the EEOC on March 8, 1999. On March 30, 1999, the EEOC issued a right to sue letter to Weigel.

On June 3, 1999, Weigel filed suit against BHET in the United States District Court for the Eastern District of Tennessee. The complaint alleged that Weigel had been discriminated against on the basis of her age in the terms and conditions of her employment between June 1994 and April 30, 1998. The complaint further alleged that BHET had decided not to offer Weigel a position as a PRN nurse in February 1999, and instead offered the position to a substantially younger applicant. On August 7, 2000, Weigel filed a motion to amend the pretrial order to add a claim alleging that BHET refused to rehire her in retaliation for her opposition to age discrimination at the hospital.

On October 23, 2000, the district court entered an order granting plaintiff's motion to amend the complaint and granting defendant's motion for summary judgment. The court found that Weigel's claims relating to discriminatory treatment during her tenure at BHET were time-barred, because Weigel's EEOC charge was filed more than 300 days after her resignation. The court then determined that Weigel had not made her prima facie case of retaliation, because a

the discriminatory conditions of employment that she experienced prior to her resignation from BHET and the fact that BHET rejected her application for employment in favor of a younger worker in 1999. BHET argues that because Weigel did not include her theory that BHET refused to rehire her due to the comments on her exit questionnaire, she is barred from raising her retaliation claim in the instant suit.

BHET relies upon this circuit's decision in *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991). In *Ang*, an employee filed an EEOC charge alleging termination based upon national origin. The employee subsequently alleged in his suit that he was dismissed in retaliation for demanding that his employer study the progress of minorities in the company. The charge did not refer to retaliation in the factual statement and the employee did not check the "retaliation" box on the charge form. We held that the retaliation claim was outside the scope of the EEOC charge, and therefore barred. *Id.* at 547.

We do not agree that *Ang* requires dismissal of Weigel's retaliation claim. *Ang* did not purport to change the general rule in this circuit, which is that the "judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Id.* at 545 (quoting *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977)). Pursuant to this rule, we have recognized that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Thus, in *Farmer v. ARA Services, Inc.*, we held that the plaintiffs could bring equal pay claims alleging that their union discriminated in negotiating pay scales for different job designations, despite the fact that the plaintiffs' EEOC charge alleged only that the union failed to represent them in securing the higher paying job designations. 660 F.2d 1096, 1105 (6th Cir. 1981). We concluded that the EEOC charge implicitly alleged that the plaintiffs possessed the same qualifications and responsibilities as employees in

(6th Cir. 1994). Therefore, Weigel's claims relating to the discrimination she experienced prior to her resignation are insufficient to show pretext.

In sum, Weigel has failed to demonstrate a material fact question as to whether a number of the nondiscriminatory reasons asserted by BHET for not rehiring her were pretexts for age discrimination. Therefore, we affirm the district court's grant of summary judgment to BHET as to Weigel's claim of discriminatory hiring.

## D. Retaliation

Weigel also claims that BHET's decision not to rehire her was made in retaliation for the comments she made on her exit questionnaire relating to her charges of age-based discrimination at BHET. Weigel asserts that her comments constitute protected activity in opposition to discrimination under the ADEA, and that BHET therefore could not refuse to hire her because of these comments. *See* 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any . . . applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.").

### 1. Scope of the EEOC Charge

BHET asserts that Weigel's retaliation claim should be dismissed because she did not allege retaliation in the charge she filed with the EEOC. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). On her EEOC charge, Weigel checked a box indicating discrimination based upon "Age," but did not check the box marked "Retaliation." J.A. at 112. In the factual allegations included in the charge, Weigel noted

reasonable jury could not find a causal connection between Weigel's opposition to age discrimination and BHET's decision not to rehire her. The court found that although Weigel had established a prima facie case that she was not hired due to age discrimination, Weigel had offered "no strong evidence to refute the many performance related reasons the defendant proffers for its decision not to rehire the plaintiff" and had similarly "not strongly refute[d]" BHET's patient census explanation. J.A. at 21. Weigel filed a timely notice of appeal.

## II. ANALYSIS

### A. Standard of Review

We review de novo a grant of summary judgment. *See Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097 (6th Cir. 1994). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). This court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In conducting the summary judgment analysis, this court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *See Gen. Elec. Co.*, 29 F.3d at 1097-98.

## B. Pre-Resignation Discrimination Claims

Weigel appeals the district court's determination that her claims relating to the conditions of her employment during her tenure at BHET are time-barred. In Tennessee, which has state laws prohibiting age discrimination, a plaintiff's ADEA claim will be dismissed as untimely if the plaintiff fails to file a charge within 300 days of the discriminatory action. 29 U.S.C. § 626(d)(2); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992) (noting that Tennessee is a "deferral" state, subject to 300-day limitations period). The ADEA's filing period is not jurisdictional in nature. "Rather, the ADEA filing period is more in the nature of a statute of limitations that is subject to equitable modification." *Id.* at 578. Weigel concedes that her EEOC charge was filed several days after the 300th day following her resignation, which would render all claims arising from conduct that preceded her departure from BHET untimely. Weigel contends, however, that the district court erred in failing to equitably toll the limitations period because her attorney's workload prevented him from addressing her claim until after the limitations period had expired. Weigel also contends that she has demonstrated a "continuing violation," which connects the discriminatory acts occurring outside the limitations period to acts that occurred within the 300-day period.

This court reviews a district court's decision regarding equitable tolling for abuse of discretion. *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). In *Truitt*, we identified five factors that should be considered in deciding whether to equitably toll a limitations period:

1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement.

BHET's absenteeism explanation is pretextual. In order to show that an employer's proffered nondiscriminatory explanation is pretext on the grounds that a similarly situated employee received disparate treatment for the same conduct, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation omitted). The younger nurses that Weigel identifies are not similarly situated to her insofar as they did not resign and then seek to be rehired by BHET. In addition, Weigel's deposition testimony identifies only a few isolated instances of unexcused absences by younger nurses. There is no evidence to suggest that any younger nurses exhibited systematic absenteeism problems similar to Weigel's. Thus, Weigel has not made the necessary showing that similarly situated employees "engaged in misconduct of 'comparable seriousness.'" *Harrison v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1115 (6th Cir.) (quotation omitted), *cert. denied*, 519 U.S. 863 (1996). Weigel's evidence therefore has little probative value as to the question of whether her absenteeism problems were sufficient motivation for BHET's refusal to hire her.

We also reject Weigel's argument that her claims of discrimination while working at BHET, although time-barred, should be considered as relevant background evidence of discriminatory attitudes at BHET. Weigel has failed to show that these past claims of discrimination demonstrate any age-related animus on the part of Bowers, Herrin, or Collins, the acknowledged decision makers, or anybody else meaningfully involved in the decision not to rehire her. Weigel's discrimination complaints relate primarily to discriminatory treatment by her immediate supervisors during her tenure at BHET, Alicia McCampbell and Wanda Martin. The one instance of an ageist comment cited by Weigel was an occasion on which McCampbell made a reference to "old, ugly employees." This isolated remark, however, was remote in time and not related to the decision not to rehire Weigel. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330

discriminated," although such a showing might not "*always* be adequate to sustain a jury's finding of liability." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Upon review of the record, we can find no material facts showing BHET's nondiscriminatory explanations to be pretextual. BHET initially alleges that Weigel was not eligible for rehire due to her failure to give two-weeks notice upon her resignation in April of 1998. The evidence in the record clearly supports BHET's contention that its policy was to rehire employees who had resigned without notice only in exceptional circumstances, which were not present in Weigel's case.

Weigel has presented some facts to dispute BHET's notice explanation; but the factual disputes raised by Weigel are not material. Weigel claims that she was told by Dr. Glover that Herrin told him that Weigel was eligible for rehire despite her failure to give notice. As BHET correctly points out, however, this evidence is inadmissible double hearsay insofar as it offers Dr. Glover's out-of-court statement to prove an out-of-court statement made by Herrin, which in turn is offered for its truth. Therefore, Dr. Glover's statement cannot be considered for the purposes of summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). Weigel also claims that Bowers offered her a job at the December interview even though Bowers knew about Weigel's failure to give notice. Any dispute about what Bowers said to Weigel during the December meeting is immaterial, however, because Weigel does not contradict the statements of Shaffer, Bowers, and Ensworth indicating that Bowers did not have the authority to waive the notice requirement or make hiring decisions.

BHET also cites Weigel's poor attendance record during her previous term of employment with BHET as a reason for not rehiring her. In response, Weigel claims that similarly situated younger nurses were not disciplined as severely as older nurses for absenteeism. Weigel's allegations, even if true, do not demonstrate a material issue of fact as to whether

*Id.* In light of these factors, the district court did not abuse its discretion. Weigel admits that she consulted with an attorney, Marilyn Hudson, "concerning my claims against this Defendant" immediately prior to the time of her resignation. J.A. at 285 (Weigel Aff. at 1). Constructive knowledge of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period. *Jackson*, 961 F.2d at 579. Moreover, the fact that Weigel waited until the last working day before the expiration of the limitations period to consult Attorney Hyder suggests a lack of diligence on her part. Therefore, the district court did not abuse its discretion in refusing to equitably toll the statute of limitations.

Weigel next attempts to save her pre-resignation claims under the "continuing violation" theory. This circuit has recognized that "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). As evidence of a continuing violation, Weigel cites the fact that BHET continued to advertise a day-shift nurse position in the Birthing Center from the time of her resignation until February 1, 1999. Weigel claims that BHET's refusal to hire her in early 1999, despite continuously having an opening since her resignation, demonstrates that BHET's refusal to hire her was part of a continuous series of discriminatory acts that stretched from the time she was employed at BHET to the time that she was ultimately refused employment in early 1999.

"To establish a continuing violation, plaintiff must first produce evidence of a 'current' violation taking place within the limitations period. Second, plaintiff must show that the current violation . . . is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period." *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996). Thus, the current violation (the one occurring within the limitations period) must be sufficiently similar or related to the time-barred acts, such that it can be said that the acts are all part of the same pattern of

discrimination. *See Haithcock*, 958 F.2d at 678 (noting acts were "sufficiently interconnected to satisfy the definition of continuing violations"). The discriminatory conduct also must be continuous or ongoing. *See id.* at 677. The doctrine is designed to address circumstances where discrimination becomes increasingly apparent as discrete acts build over time to reveal a pattern or practice. *See Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 224 (6th Cir. 1991).

Applying these basic principles, Weigel has not shown a continuing violation. Weigel's pre-resignation claims relate to discriminatory terms and conditions of employment. She claims that older nurses were saddled with greater work burdens and were given less flexibility in scheduling their hours and taking sick leave than younger workers. This conduct ceased to affect Weigel once she resigned from BHET in 1998. The current violation — BHET's refusal to hire — relates to BHET's hiring practices, not to how nurses are treated on the job. Weigel was in an entirely different position in relation to BHET at the time of the current violation than she was during the pre-resignation incidents. Moreover, the gap in time — eight months — between Weigel's resignation and her unsuccessful bid to return to BHET demonstrates that the hospital's discriminatory acts were not continuous, at least with respect to Weigel.

In sum, we determine that the district court correctly found Weigel's pre-resignation claims of age discrimination to be time-barred. Weigel's EEOC charge was filed more than 300 days after she resigned from BHET, so all claims arising from acts of discrimination occurring prior to her resignation are untimely.

## C. Discriminatory Hiring Claim

Weigel also claims that BHET discriminated against her on the basis of her age when it refused to rehire her for the PRN position eight months after her resignation, and instead hired a substantially younger candidate. Because Weigel presented no direct evidence of age discrimination, the district court analyzed her case under the burden-shifting framework

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The district court initially concluded that Weigel had demonstrated a prima facie case of age discrimination, because "[s]he was more than 40 years old. She was subjected to an adverse employment decision; she was not rehired. A reasonable trier of fact could determine that she was qualified for the position, and a reasonable trier of fact could determine that she was replaced by a substantially younger person." J.A. at 20. Therefore, the court turned to BHET's proffered nondiscriminatory reasons: "(1) that the hospital did not anticipate needing more birthing staff as it expected a slow period in its birthing department, and (2) that the defendant did not want to rehire the plaintiff based on her previous employment record with BHET." J.A. at 21. The court concluded that no reasonable trier of fact could find that these reasons were pretextual, and that summary judgment for the defendant was warranted.

Under the *McDonnell Douglas* burden-shifting framework, once the plaintiff establishes a prima facie case of intentional discrimination, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once the defendant has articulated a nondiscriminatory reason for its decision, the presumption of discrimination that arises from the plaintiff's prima facie case disappears and the plaintiff must have the opportunity to show that the defendant's proffered explanation is merely a pretext for discrimination. *Id.* at 255-56. This circuit has recognized three primary routes to proving pretext: the plaintiff may show "either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (quotation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully