NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  17a0273n.06

CASE NO. 16-3459

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEPHANIE WATSON, | ) | |
| | ) | **FILED** |
| *Plaintiff-Appellant*, | ) | May 15, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | **ON APPEAL FROM THE** |
| OHIO DEPARTMENT of | ) | **UNITED STATES DISTRICT** |
| REHABILITATION & CORRECTION, | ) | **COURT FOR THE SOUTHERN** |
| | ) | **DISTRICT OF OHIO** |
| *Defendant-Appellee*. | ) | |
| | ) | |

Before:  BATCHELDER, SUTTON, and KETHLEDGE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Stephanie Watson appeals the district court's grant of summary judgment to the Ohio Department of Rehabilitation and Correction (ODRC) on her claims that the ODRC discriminated and retaliated against her when it removed her from her position as a probation officer and did not rehire her for other openings.  Because Watson failed to preserve some claims, waived others, and could show no evidence of pretext to overcome ODRC's legitimate, nondiscriminatory explanations for the rest, we AFFIRM.

**I.**

In August 2010, Stephanie Watson was a 54-year-old, African-American female with a bachelor's degree, a master's degree in educational administration, a juris doctor degree, and various teaching accreditations.  She applied for and obtained a job as a parole officer with the ODRC at the Mansfield Adult Parole Authority. She kept that job for 50 days, until the ODRC fired her on October 6, 2010, while she was still a probationary employee.  The ODRC has cited

numerous incidents and write-ups, beginning on her first day and continuing throughout, but Watson flatly denies all of them as untrue and, given that this is a review of an order granting summary judgment, we will ignore those contested accusations.

But the key incident is not in dispute. Watson chose not to attend a required firearms-training class, scheduled for Saturday, October 2, 2010, and on October 5, 2010, ODRC Deputy Director Sara Andrews fired her because she had "disobeyed [her supervisor's] direct order to attend firearms training," R. 42-2 at 2 ¶ 9, and therefore "failed to successfully complete [her] probationary period," R. 39-1 Ex. 22 (letter to Watson, termination effective October 6, 2010).

Watson then began to apply for other job openings with the ODRC. As the ODRC points out, she applied for nearly 200 jobs across the state, including Automotive Technician and Assistant Medical Director. But in this lawsuit and appeal she points to 23 specific jobs in 14 different counties: 19 teaching jobs, three assistant principal jobs, and an educational administrator job. Although the ODRC considered her eligible for re-hire, and even interviewed her for at least 12 of these 23 openings, she was not hired for any.

On June 21, 2011, Watson filed an EEOC charge ("Charge #1"), claiming that the ODRC terminated her due to retaliation and race and gender discrimination.[1] She filed EEOC Charge #2 on July 1, 2013, claiming retaliation and race and gender discrimination for the ODRC's failure to hire her for three specific jobs (identified as job numbers 9a, 9b, and 17 in this suit and appeal). She filed EEOC Charge #3 on April 10, 2015, claiming retaliation and discrimination for the ODRC's failure to hire her for another specific job (number 21). The EEOC issued right-to-sue letters for all three charges and Watson sued on December 5, 2013, claiming retaliatory and discriminatory termination and failure-to-hire for the 23 jobs addressed here.

---

[1] She also claimed discrimination based on age (54), religion (Jehovah's Witness), and disability (Grave's disease), and included these claims in her first complaint in the district court, but she has since abandoned them.

The ODRC moved for summary judgment, which the district court granted. *Watson v. ODRC*, 167 F. Supp. 3d 912 (S.D. Ohio 2016). Regarding her termination, the court found no retaliation because she had engaged in no protected activity beforehand, and no discrimination because she had compared herself to two coworkers who were not similarly situated (i.e., neither had skipped a mandatory training without permission). *Id*. at 924. The 23 failure-to-hire claims were a bit more cumbersome but the district court was able to group them for analysis.

The court found that Watson could not attribute the Group 1 claims (job numbers 4, 5, and 19) to retaliation because the ODRC's decisions occurred before EEOC Charge #1, which was Watson's first protected activity. *Id*. at 925. Because Watson had not included these claims in her EEOC Charge #1, the district court analyzed them under the "expected scope of investigation test," which "asks whether facts related . . . to the charged claim would prompt the EEOC to investigate a different, uncharged claim" and, if so, allows "the plaintiff [to] bring suit." *Id*. (relying on and quoting *Weigel v. Baptist Hosp.*, 302 F.3d 367, 380 (6th Cir. 2002)). The court found that the facts of Watson's claim about her firing from the parole officer job in Mansfield would not necessarily or reasonably have prompted the EEOC to investigate, on its own initiative, the ODRC's failure to hire Watson for teaching jobs in different counties involving different decision makers. *Id*. Consequently, the district court rejected these three claims (jobs 4, 5, and 19) as unexhausted or unpreserved.

Group 2 comprised four employment-application denials or "non-selections" of Watson (jobs 2, 6, 7a, and 7b) that occurred after Watson's filing of EEOC Charge #1 but before the 300-day lookback of her EEOC Charge #2, *see* 42 U.S.C. § 2000e-5(e)(1) (a plaintiff must file an EEOC charge within either 180 or 300 days of the date of a discrete act of discrimination or retaliation). In its effort to reconcile the Sixth Circuit case law on this topic, the district court essentially settled on *Bacon v. Honda of America Manufacturing, Inc.*, 192 F. App'x 337, 341-42

3

(6th Cir. 2006) (relying on *Nat'l R.R. Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 113-15 (2002)), as controlling, an opinion in which we "held that any acts occurring between the filing date of [one] charge and the 300-day period preceding [the subsequent] charge were unexhausted and were not actionable, [although] they could be used as background evidence." *See Watson*, 167 F. Supp. 3d at 928. Thus concluding that "*Morgan* bars judicial review of discrete acts that occur after the filing date of an EEOC complaint," the district court held that, "[b]ecause there was no EEOC charge filed within 300 days of [Watson]'s notification of non-selection for Jobs 2, 6, 7a, and 7b, those claims are barred." *Id*.

Group 3 comprised two employment-application denials (jobs 1 and 20) that occurred within the 300-day lookback of EEOC Charge #2, but which Watson had not included in that charge. Here again the district court invoked the "expected scope of investigation test" and found that Watson had "ma[de] no factual argument regarding the specific reasons why Charge Two would lead the EEOC to investigate Jobs 1 and 20." *Id*. at 929. Moreover, the court cited "major differences" between these two denials and the three that Watson had specifically included in her EEOC Charge #2.

> Jobs 1 and 20 had different appointing authorities, were for different positions at different facilities, and happened outside of the dates listed on [Watson]'s charge [i.e., EEOC Charge #2]. Job 1 shared no reviewers, interviewers, or appointing authority with either charged job. Further, [Watson] advanced to the interview stage for the charged jobs but did not for Job 20.

*Id*. (record citations omitted). The court concluded "that an investigation into Jobs 1 and 20 would not naturally have grown out of the allegations of Charge Two." *Id*. at 930. The court rejected these two claims (jobs 1 and 20) as unexhausted or unpreserved.

Group 4 comprised three employment-application denials (jobs 9a, 9b, and 17) that Watson had properly included in EEOC Charge #2, but which she had subsequently—perhaps accidentally—dismissed in a "Joint Stipulation of Dismissal." When Watson attempted to

reinstate these claims via her second amended complaint, she was well past the 90-day deadline from her Charge #2 right-to-sue letter. The court explained that, "[u]nless equitable tolling applies, the ninety-day filing requirement requires the [c]ourt to dismiss Title VII complaints which are re-filed outside of the ninety-day window." *Id.* (citing *Tate v. United Servs. Assocs., Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003)). The court considered the equitable tolling factors, found no facts to support equitable tolling, and held that Watson's claims for these three claims (jobs 9a, 9b, and 17) were time barred. *Id.* at 930-31.

Group 5 comprised nine employment-application denials (jobs 3, 8, 10, 11, 12, 13, 14, 15, and 18)[2] that occurred after Watson's EEOC Charge #2 but before the 300-day lookback of EEOC Charge #3. The court determined, as it had with Group 2, that pursuant to *Bacon* and *Morgan*, any claims falling within this gap are unpreserved, and it rejected all nine.

Group 6 consists only of job 21, the educational administrator job, which Watson had timely included in EEOC Charge #3. Watson claimed race and gender discrimination, and identified a Caucasian male (Dwight Anstaett) who had been selected in her stead. The ODRC answered that Anstaett was more qualified (i.e., had superior experience for the job, such as "corrections and career technical education," was "extremely knowledgeable" of the particular school's "mission and the duties of the position," and had a "wealth of experience in grant management and technical curriculum"), thereby establishing a "legitimate business reason for its selection of [] Anstaett instead of [Watson]." *Id.* at 933 (internal quotation marks omitted). The district court held that Watson could not prove pretext. Her sole argument, which relied on the ODRC's denials of other employment applications rather than this one, was that the subjective nature of the ODRC's hiring process allows for discrimination. The court rejected

---

[2] The court analyzed job 12 separately because its exact date was unknown, but ultimately determined that its date must have fallen into this time span (after EEOC Charge #2 but before June 2014) and analyzed it the same way it analyzed the other eight claims in Group 5. Therefore, we include it in Group 5 here.

this argument and cited examples (including that Watson herself had obtained the original parole-officer job) that refuted such inherent discrimination in the hiring process. *Id*. at 933-34. Watson also claimed retaliation but could not show that the decision maker had any knowledge of her prior protected activity.

Group 7 consists of just job 16, which Watson had not included in any of her three EEOC charges and for which the exact date was unknown, though it most likely related to Charge #3. The court applied the "expected scope of investigation test" and found that the claims in Charge #3 would not necessarily or reasonably lead the EEOC to investigate job 16. *Id*. at 932.

Having rejected all of Watson's claims, the district court granted summary judgment to the ODRC, ending the case. Watson appealed.

## II.

We review de novo a grant of summary judgment, applying the same standard as applied by the district court. *Domingo v. Kowalski*, 810 F.3d 403, 410 (6th Cir. 2016). "Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(a)). All evidence is construed in the light most favorable to the non-moving party. *Id*.

## A.

Watson argues that she properly preserved her failure-to-hire claims. She contends that once she filed her first EEOC charge, any and all subsequent failure-to-hire claims were both automatically included and timely, so she was not required to file EEOC charges for them specifically. Her theory is that the "expected scope of investigation test" ("ESOI Test") provides for this and urges us to "rule emphatically" that we follow the ESOI Test. Apt. Br. at 6. She does not address contradictory case law, such as *Bacon*, relied on by the district court.

6

To be sure, the circumstances here—concerning 23 claims and three EEOC charges, spanning almost five years—are unusual, perhaps unique, and the district court, by its own admission, struggled to reconcile our case law in applying it to these circumstances. Thus, our first step is to recap and reconcile our case law into one coherent and applicable rule.

In June 2002, the Supreme Court held that in a Title VII action stemming from an EEOC right-to-sue letter there is no "continuing" or "ongoing violation doctrine"; each "unlawful employment practice" is a "discrete act or single occurrence." *Morgan*, 536 U.S. at 110-11. Moreover, because "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" the aggrieved employee "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it," and "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id*. at 110-12.

In July 2002, we adopted the ESOI Test, allowing suit for unlawful employment practices, even those not in the EEOC charge, if "the scope of the EEOC investigation" would be "reasonably expected" to "prompt the EEOC to investigate [those] different, uncharged claim[s]." *Weigel*, 302 F.3d at 380. In so doing, we explained that retaliation claims are typical because "retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants." *Id*.

In September 2002, we applied *Morgan* to reject a continuing-violations theory and held instead that we must analyze each alleged unlawful employment practice as a discrete act requiring an associated EEOC charge. *Sherman v. Chrysler Corp*., 47 F. App'x 716, 721 (6th Cir. 2002). We found that because that plaintiff "did not file an EEOC charge with regard to [certain acts] within the 300 day statutory period, he failed to exhaust his administrative remedies as to them," and that the "retaliation claims based on acts subsequent to the filing of

th[e] [EEOC] charge [] were never the subject of an EEOC charge," so they too "were not exhausted." *Id*. We did not discuss the ESOI Test, which the parties had not raised.

In March 2004, we held that *Morgan* bars only claims for unlawful employment practices that happened *before* the 300-day lookback period; it does not bar claims for unlawful employment practices that happen after the filing of the EEOC charge. *Delisle v. Brimfield Twp. Police Dept.*, 94 F. App'x 247, 253 (6th Cir. 2004). The majority claimed "reliance on *Weigel*" to hold that the ESOI Test applies to subsequently occurring *acts*. *Id*. The dissent pointed out that *Weigel* had not involved different "acts," it had involved different legal theories (i.e., retaliation in addition to discrimination), whereas *Morgan* had involved different acts. *Id.* at 260-61 (Batchelder, J., dissenting).

In July 2006, we held "that [the plaintiff]'s Title VII claims only cover[ed] discrete acts of discrimination that occurred within the 300–day period prior to the filing of his [first] charge of discrimination on May 24, 2000 and the 300–day period prior to the filing of his [second charge on] July 10, 2001," meaning "that discrete discriminatory acts that occurred outside the periods of July 28, 1999 to May 24, 2000 and September 14, 2000 to July 10, 2001 can be used as background evidence in support of a timely claim, but are not actionable in themselves." *Bacon*, 192 F. App'x at 341-42 (quotation marks omitted) (quoting and relying on *Morgan*, 536 U.S. at 113-15). We cited *Weigel* elsewhere in the opinion, suggesting awareness of the ESOI Test without specifically incorporating it; but we did not discuss or cite either *Sherman* or *Delisle*.

In the present case, the district court decided that *Delisle* was in irresolvable conflict with *Sherman* and *Bacon* and, after providing its reasons, chose to ignore *Delisle*, offering that it was instead applying *Sherman* and *Bacon*. *See Watson*, 167 F. Supp. 3d at 929. It bears mention that neither *Delisle*, *Sherman*, nor *Bacon* is a published opinion, so our Sixth Circuit Rule 32.1(b)

8

does not necessarily apply. *See* 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."). Nevertheless, we are reminded frequently that "the doctrine of *stare decisis* is of fundamental importance to the rule of law," *e.g., Hurst v. Florida*, 136 S. Ct. 616, 623 (2016), and we are better served by reconciling, if at all possible, apparently incongruous opinions rather than merely ignoring such opinions, even unpublished, because it would be easier to do so in an individual case.

*Morgan* says that an aggrieved employee must file an EEOC charge within 300 days of an unlawful employment action, every one of which is a discrete act (*Sherman* applies only this principle, as it does not mention the ESOI Test). *Weigel* adopts the ESOI Test, which allows a plaintiff to raise a new legal claim in court even if he did not include that theory in the EEOC charge, so long as that claim is reasonably expected to fall within the scope of the original EEOC investigation. *Delisle* extends *Weigel* to "acts," so as to allow a plaintiff to bring a claim in court for an *act* that occurred any time after the EEOC charge's 300-day lookback even if he did not include that discrete act in the EEOC charge, so long as that act would be reasonably expected to fall within the scope of the original investigation. Finally, *Bacon* says that the filing of a subsequent EEOC charge cuts off a prior charge's ESOI Test at the date of the filing of the prior EEOC charge, starting a new 300-day lookback (and its own ESOI Test) for the new EEOC charge and mandating that any acts prior to the new 300-day lookback are both too old for the new EEOC charge and cut off from the prior EEOC charge. Consequently, if an aggrieved employee files a second (or successive) EEOC charge, then he must include in it all acts and claims that had occurred since the previous EEOC charge or else he waives them.

In applying this construction of our test for preserving claims via EEOC charges and § 2000e-5(e)(1), we reach the same result as the district court did for all 23 of Watson's failure-to-hire claims, based on its rendition of undisputed facts which is thoroughly and clearly

9

presented in its opinion. The Group 1 claims fail the ESOI Test. The Group 2 claims, which fall after the filing of EEOC Charge #1 and before the 300-day lookback of EEOC Charge #2, were not preserved. The Group 3 claims fail the ESOI Test. The Group 4 claims were dismissed by stipulation and their attempted reinstatement was untimely (*see* § II.B, *infra*). The Group 5 claims, which occurred after the filing of EEOC Charge #2 and before the 300-day lookback of EEOC Charge #3, were not preserved. The Group 6 claim, which was properly preserved, fails on the merits because Watson could not show pretext (*see* § II.C, *infra*). And the Group 7 claim fails the ESOI Test. All told, we agree with the district court's decision on each of these claims.

**B.**

Watson asserts that she "did not intend [to] dismiss her claims," referring to claims 9a, 9b, and 17, and argues that "[t]he Trial Court did not apply equitable estoppel to do justice when it dismissed them." Apt. Br. at 7. Presumably, she means equitable tolling. We review this for abuse of discretion. *See Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014).

The district court found that Watson had voluntarily dismissed these three claims—a finding that she does not actually contest (arguing only that she did not "intend" to dismiss them, Apt. Br. at 22, and that her lawyer did not "mean" to, Apt. Br. at 20)—and failed to re-file them within 90 days of receiving her right to sue letter from the EEOC. *Watson*, 167 F. Supp. 3d at 930. This untimeliness required dismissal of the claims, unless equitable tolling would save them. *Id.* (citing *Tate v. United States Servs. Assocs., Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003)). The court considered equitable tolling and found that Watson had at least constructive notice of the right-to-sue letter and that she had made no argument regarding the other equitable tolling factors (e.g., diligence, prejudice, reasonableness). *Id.* Accordingly, the court found no basis to apply equitable tolling and dismissed these three claims as time barred. *Id*.

Watson fares no better on appeal. In her brief, Watson acknowledges that we consider multiple factors in deciding the applicability of equitable tolling, including, among others, her diligence, the prejudice to ODRC, and her reasonableness in remaining ignorant. *See Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010). Watson's principal argument is that she did not "intend to" or "mean to" dismiss these claims, but that is not a factor and actually works against her. She argues that she was diligent in attempting to revive the claims in that she filed an amended complaint within a week of the joint stipulation dismissing those claims. But, given her argument here, she was certainly not diligent in preparing or reviewing the joint stipulation that dismissed those claims. *See Clark v. Nissan Motor Mfg. Corp. U.S.A.*, No. 97-cv-5956, 1998 WL 786892, at *4 (6th Cir., Oct. 26, 1998) (diligence "would have revealed to [the plaintiff] and his attorney the critical consequences of the action they then contemplated and eventually undertook"). She has also failed to persuade us or even explain how her actions were reasonable under these circumstances. *See id.* We find no basis for holding that the district court abused its discretion in denying her equitable tolling on these claims.

## C.

Watson argues that summary judgment was improper because the district court weighed evidence about the hiring process and failed to construe disputed facts in her favor. Apt. Br. at 7. But she does not specify which facts or evidence. Based on her ensuing argument, it appears most likely that she is referring to facts about her being more qualified than the applicants actually hired. *See*, *e.g.*, Apt. Br. at 28 ("[The ODRC]'s process [is] designed to hire who it wants and ignore [Watson]'s (or any other similarly situated applicant) vastly superior education and experience."). Watson also says that she can demonstrate pretext on the basis that the ODRC screening and hiring process allows "ODRC to hire regardless of superior qualifications and experience," and is therefore a tool to discriminate based on race and sex. Apt. Br. at 7.

But only one of Watson's claims was decided on the merits: job 21 (a.k.a., Group 6), *see* § II.A, *supra*, and in her appellate brief, she expressly abandoned her appeal regarding job 21. *See* Apt. Br. at 24 ("Ms. Watson abandons her appeal related to the selection of Job 21 as marginal and in order to focus on other arguments."). This argument applies to none of her other claims, is therefore irrelevant to the outcome of this appeal, and warrants no further consideration.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.