**Harry A. PALMER, Plaintiff–
Appellant,**

v.

**John E. POTTER, Postmaster General;
United States Postal Service,
Defendants–Appellees.**

**No. 02–6549.**

United States Court of Appeals,
Sixth Circuit.

April 14, 2004.

Kenneth L. Sales, Sales, Tillman & Walbaum, Louisville, KY, for Plaintiff–Appellant.

Candace G. Hill, Asst. U.S. Attorney, Terry M. Cushing, Asst. U.S. Attorney, Regina S. Edwards, U.S. Attorney's Office, Louisville, KY, for Defendants–Appellees.

Before SILER, MOORE, and SUTTON, Circuit Judges.

SILER, Circuit Judge.

Harry A. Palmer appeals the district court's grant of summary judgment in favor of the Postmaster General in this employment discrimination suit. We affirm.

## BACKGROUND

Palmer was a mail carrier who worked in the United States Postal Service's (USPS's) Okolona branch in Louisville, Kentucky. In 2000, he contacted Susan Arnold, the Okolona Station Manager, and demanded that she investigate an office rumor that he had received oral sex from Deborah Todorich in the post office parking lot.

Arnold confronted Todorich, who denied the specific rumor. She admitted, however, that she and Palmer had engaged in other sexual relations at different times, including having sex in Palmer's mail truck, at the union hall, and at his home and an apartment while out on their routes. She detailed an extended affair which, according to Todorich, she had attempted to end on several occasions. She alleged that Palmer would not let her end the affair, continuing to pressure her to have sex. She claimed that Palmer threat-

ened that, among other things, he would tell her husband of their relations and use his substantial union influence to have her demoted from "transitional" to "casual" employee. Todorich later submitted a detailed statement to Arnold outlining the chronology of her relationship with Palmer. She also supplied other evidence to substantiate her claims, including a copy of her cell phone, pager, and telephone bills.

Arnold next confronted Palmer, who denied everything. He later submitted a statement painting Todorich as the harasser and said that he had taken an interest in her but only because he pitied her and, as a union steward, wanted to help.

An internal investigation into Todorich's claim of sexual harassment was thereafter initiated. The investigation culminated in a report by Postmaster Robert Lochhead outlining the evidence against Palmer and formally charging him with improper conduct. Thereafter Palmer was given an opportunity to challenge the Postmaster's report. Palmer stuck with his categorical denial, continuing to assert that his relationship with Todorich had been purely professional. In March 2001 the Postmaster issued a *Letter of Decision—Removal*, informing Palmer that he would be discharged effective April 2, 2001.

Todorich too was fired. Both she and Palmer grieved their removals. Todorich reached a settlement whereby she admitted guilt but accepted reinstatement without backpay. No settlement was reached in Palmer's case, however, and it proceeded to arbitration. The arbitrator ruled that Palmer was guilty of improper conduct but that there was insufficient proof

to sustain a sexual harassment allegation. He therefore reinstated Palmer to a different branch of the post office.

Palmer subsequently brought this action against the USPS for gender discrimination under Title VII and retaliation.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo. See, e.g., Smith v. Wal–Mart Stores, Inc.,* 167 F.3d 286, 289 (6th Cir.1999).

## DISCUSSION

Palmer's Title VII claim must fail because Palmer and Todorich were not "similarly situated" and because, even assuming that Palmer could establish a prima facie case of gender discrimination, he has submitted no evidence tending to prove that the USPS's proffered legitimate, non-discriminatory reason for firing him was pretextual.[1]

### 1. Palmer and Todorich were not "Similarly Situated"

■ The fourth element of Palmer's prima facie case requires that he show that he "was treated differently from similarly situated members of the unprotected class." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund,* 349 F.3d 300, 306 (6th Cir.2003).

[T]o be deemed "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating cir-

---

1. This is an "indirect evidence" case, in which "[t]he analytical framework ... is well-established. First, the plaintiff must set forth a *prima facie* case, which gives rise to an inference of discrimination." *Sutherland v. Mich. Dep't of Treasury,* 344 F.3d 603, 614 (6th Cir.2003). "Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue. If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* at 614–15.

cumstances that would distinguish their conduct or the employer's treatment of them for it."

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)).

Palmer and Todorich were not "similarly situated" for two reasons. First, and most fundamentally, the conduct for which they were disciplined was not comparable. While both were found to have engaged in improper conduct, only Palmer was accused of sexual harassment. Such a qualitative difference in conduct renders futile any attempt to satisfy the "similarly situated" element.[2] Second, Palmer's status as a thirty-year postal veteran wielding substantial union influence was very different from Todorich's status as a relative rookie recently promoted from "casual" to "transitional" worker. An employer is justified in disciplining offenders such as Palmer— veterans who hold elevated positions— more harshly than their junior colleagues. *See Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) (rejecting the plaintiff's reverse gender-discrimination claim on the ground that he could not satisfy the "similarly situated" element of his prima facie case in part because, unlike the female to whom he sought comparison, he "was a member of management" and "had authority over three offices and several subordinates").

---

2. *See, e.g., Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir.2002) (finding the "similarly situated" element not satisfied where "[the plaintiff's] infraction was qualitatively more serious" than the co-workers to which he compared himself, and noting that an "employer's more severe treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination"); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) (holding that the plaintiff had failed to establish a prima facie case where she had

## 2. *Failure to Show Pretext*

■ Even assuming, *arguendo*, that Palmer could establish a prima facie case of gender discrimination, his Title VII claim would still fail because he has not shown that the USPS's proffered legitimate, non-discriminatory reason for firing him was pretextual. The so-called "honest belief" rule stands in his way.

> [In arguing pretext,] the plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action.

> In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. . . .

> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed. . . .

*Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001) (citations omitted).

---

"produced no evidence showing that [the other] employees were similarly situated with respect to the severity and frequency of their performance errors"); *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 601 (6th Cir.2001) (noting that "the employees [the plaintiff] seeks to cast as similarly situated differ[ed] from her in several important ways," not the least of which was that "the male employees' conduct was different"); *Braithwaite v. Timken Co.*, 258 F.3d 488, 497 (6th Cir.2001) (finding that the "similarly situated" element was not satisfied where plaintiff broke a more serious company rule).

Palmer has put forth no evidence that would suggest that the USPS did not "honestly believe" that he had engaged in improper conduct with and sexually harassed Todorich.[3] Instead, his voluminous submissions attempt to prove that he did not in fact harass her and that she is an incredible witness. As *Braithwaite* makes clear, this does not suffice.[4]

AFFIRMED.

3. Palmer notes the United States Postal Inspection Service's Report of December 2000, which concluded that "if a relationship between Mr. Palmer and Ms. Todorich existed, it was a[sic] voluntary and any sexual activity was consensual." But this report was only part of an "initial investigation," was not binding on the USPS, and was based only on the interviews of Palmer, Todorich and the Whispering Hill Apartments assistant manager. In any event, at best the report is evidence supporting Palmer's contention that he never had a relationship with Todorich; it is *not* evidence of pretext.

4. There is ample support for the USPS's conclusion that Palmer sexually harassed Todorich. Among the most damaging evidence against him was a sexually-explicit and profane telephone message he left for her.