**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0383n.06
Filed: May 31, 2006

No. 05-3370

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SUSAN MYERS, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| CUYAHOGA COUNTY, OHIO et al., | ) | |
| | ) | **O P I N I O N** |
| **Defendants-Appellees.** | ) | |
| | ) | |

**Before: MOORE, GRIFFIN, and CUDAHY,** [*] **Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Susan Myers ("Myers") brought this lawsuit against Defendants-Appellees Cuyahoga County, the Cuyahoga County Board of Commissioners, Elsie Caraballo, and Luis Vazquez (referred to collectively as "Cuyahoga County" or "the County"), claiming that Cuyahoga County failed to make reasonable accommodations as required by the Americans with Disabilities Act ("ADA") and terminated her because of her race and sex in violation of Title VII, 42 U.S.C. § 1983, and the Ohio Revised Code § 4112. Myers alleges that Cuyahoga County failed to provide reasonable accommodation for her Adjustment Disorder and terminated her because she is white and a transsexual person. The district court concluded that Myers had failed to establish any genuine issues of material fact on her

---

[*]The Honorable Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation.

discrimination claims or her § 1983 claim, and granted summary judgment to Cuyahoga County. Myers now appeals the dismissal of her ADA and Title VII claims. For the reasons explained below, we **AFFIRM** the district court's grant of summary judgment to Cuyahoga County.

## I. FACTS AND PROCEDURE

Myers is a white transsexual woman who began working for the Cuyahoga County Department of Health and Human Services in 1982. At the time of her termination in April 2000, Myers was working for the Cuyahoga County Work and Training Agency as a Team Leader/Social Service Supervisor. Myers worked for Cuyahoga County for over sixteen years without any disciplinary problems or incidents. In July 1998, Myers unsuccessfully competed for a promotion to a supervisory role; appellee Elsie Caraballo, a Hispanic woman, was awarded that promotion. Caraballo became Myers's direct supervisor, and appellee Luis Vazquez, a Hispanic man, was Caraballo's direct supervisor. At that point, Myers's relationship with Caraballo began to deteriorate, and tensions between the two women increased. Myers alleges that after Caraballo became her supervisor, "Carabello, aided by Vazquez, began systematically working to constructively discharge Plaintiff by pretextually finding fault with Plaintiff's work, and intentionally maintaining Plaintiff in an artificially and unnecessarily stressful work environment." Joint Appendix ("J.A.") at 22 (Compl. at ¶ 4). Myers claims that Caraballo and Vazquez disliked her because she was not Hispanic and did not speak Spanish and because as a transsexual woman, she did not conform to their "gender/sex stereotyped expectations." Appellant Br. at 11.

Cuyahoga County denies these allegations, and responds that Myers was terminated for "failure of good behavior and discourteous treatment to the public" after Myers committed many serious disciplinary offenses during the months prior to her removal. J.A. at 374 (Order of Removal

2

at 1) (capitalization removed). The County claims that Myers committed twelve "racial and inappropriate acts that are violations of Section 4.0 of the Cuyahoga County Policies and Procedures Manual" between September 17, 1998 and November 23, 1999. J.A. at 374-76 (Order of Removal at 1-3). The County alleges that on numerous occasions, Myers was rude and unprofessional to clients and co-workers, that she made derisive comments about Hispanic and Spanish-speaking people and poor people receiving public benefits, and that she inappropriately expressed her opinions about the personal life choices of her clients. On August 13, 1999, Appellee Caraballo issued Myers a written reprimand for "argumentative and resistant behavior" allegedly occurring on May 13, 1999, and June 16, 1999. J.A. at 396 (Aug. 13, 1999 Written Reprimand). Cuyahoga County claims that Myers also failed to complete necessary job assignments, for which Myers was given a written reprimand for neglect of duty on August 16, 1999. The County conducted two pre-disciplinary conferences to consider Myers's alleged infractions in August and December of 1999, and Myers attended and participated in these conferences. Cuyahoga County claims that during these conferences, Myers did not refute her actions in the incidents, but rather blamed her clients and co-workers for the conflicts. Myers was placed on administrative leave after the December 1999 conference, and on April 18, 2000, the Board of Cuyahoga County Commissioners ordered her removal effective April 29, 2000.

Myers first filed suit against Cuyahoga County in January 2003 alleging that the County illegally discriminated against her on the basis of disability, race, and sex, but that case was dismissed without prejudice for want of prosecution. J.A. at 14 (Oct. 6, 2003 Order). Myers refiled those same claims in this case on March 23, 2004, and Cuyahoga County filed its answer on May 18, 2004. Myers did not conduct any discovery. Cuyahoga County deposed Myers and Father

3

Howard Ziemba, a Catholic Priest, who had written a letter on Myers's behalf. Father Ziemba, a former co-worker and friend of Myers, knew Myers from when Ziemba worked as a work and training coach for Cuyahoga County from sometime in 1994 through January of 2000. The County filed a motion for summary judgment on December 13, 2004, and Myers filed a brief in opposition and a motion to amend her complaint to conform to the evidence on January 13, 2005. On February 8, 2005, the district court granted Myers's motion to amend as well as Cuyahoga County's motion for summary judgment. The district court concluded that Myers had failed to show that she is a person with a disability and had not established a prima facie case of race or sex discrimination. The district court also granted summary judgment to Cuyahoga County on Myers's § 1983 due process claim, but Myers has not appealed the dismissal of that claim. Myers filed a timely notice of appeal.

## II. ANALYSIS

Granting summary judgment to a party is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing the absence of any genuine issues of material fact, after which the burden then shifts to the nonmoving party to produce evidence demonstrating that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). The court must believe the evidence presented by the nonmoving party, and draw all justifiable inferences in its favor. *Id.* The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is proper when the nonmoving party

4

has had adequate time for discovery and yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## A. Myers's Disability-Discrimination Claim

Myers originally alleged that she was disabled by depression and that Cuyahoga County failed to make a reasonable accommodation by refusing to grant her a job transfer to a different position with the Department of Health and Human Services. Myers requested to be transferred to another location three times — in the fall of 1998, March or April 1999, and November 1999 — but did not state that her requests for a transfer were related to her depression. J.A. at 244-45 (Myers Dep. at 114-15).[1] In its motion for summary judgment, Cuyahoga County argued that it was entitled to judgment as a matter of law on Myers's disability claim, because two written statements from Myers's own doctors stated in June 1999 that Myers was not suffering from depression and was able to work. One of Myers's treating physicians stated that she "has no medical condition that would render her unable to work," J.A. at 456 (Allsop Letter), and the physician who was treating her for depression stated that Myers's depressive symptoms were "well-controlled with medication" and that Myers "should be able to tolerate usual levels of job-related stresses." J.A. at 457 (Pallas Letter).

Myers was also examined by Dr. Mary Louise Miller in August 1999 at Cuyahoga County's request in order to determine her fitness for duty and possible workplace accommodations. Miller

---

[1]Myers admitted in her deposition that she had three reasons for wanting the transfer: (1) the building where she was working was in bad condition and in an unsafe neighborhood; (2) she did not wish to be supervised by Caraballo; and (3) she wished to work in a location more convenient to her home. J.A. at 246-47 (Myers Dep. at 116-17).

concluded that Myers's depression was in remission, a fact that Cuyahoga County also relied upon in its summary judgment motion. In her memorandum opposing summary judgment, Myers admitted that she could not state a depression-based ADA claim, but moved to amend her complaint to assert an ADA claim on the basis of her Adjustment Disorder-unspecified diagnosis, which was an additional diagnosis made by Dr. Miller. Myers also argued that Dr. Miller's statement that she believed "it would be helpful to Ms. Myers mental functioning for her to be granted the reasonable accommodation of reassignment to a different location and supervisor" required the district court to deny defendants' motion for summary judgment on her ADA claim. J.A. at 455 (Miller Report at 6).

Although the district court granted Myers's motion to amend in order to allow her to assert an ADA claim based upon the Adjustment Disorder diagnosis, the court granted summary judgment to Cuyahoga County because it concluded that Myers had not shown that the Adjustment Disorder is a disability as defined by the ADA. Upon review of this issue, we conclude that Myers has failed to show that she is disabled as defined by the ADA.

In order to establish a prima facie of disability discrimination under the ADA for failure to accommodate, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *See DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).[2] We use the same analysis for claims of disability discrimination under Ohio law.

---

[2]Although *DiCarlo* dealt with a disability discrimination claim by a federal employee and therefore was brought under the Rehabilitation Act of 1973, this court has held that analysis of claims brought under the ADA "roughly parallels" those brought under the Rehabilitation Act.

*Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004). Once an ADA plaintiff establishes a prima facie case for failure to accommodate, "the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs." *DiCarlo*, 358 F.3d at 419 (internal quotation marks omitted). A "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Myers "bears the burden of establishing as an element of her prima facie case the existence of an impairment that substantially limits a major life activity." *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598 (6th Cir. 1999). The district court is correct that in her memorandum in opposition to Cuyahoga County's motion for summary judgment, Myers did not address whether her Adjustment Disorder substantially limits one or more major life activity, an omission she repeats on appeal. In viewing the evidence in the light most favorable to Myers, we infer that Myers is claiming that her Adjustment Disorder substantially limits her ability to work. However, Myers has not produced any evidence that she was substantially limited in her ability to work because of her Adjustment Disorder. Instead, she points only to Dr. Miller's statements that she "may have [had] intermittent irritability" if she remained in her current location and that her Adjustment Disorder was

*Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

7

"impacting on her current abilities in the present work environment." J.A. at 455 (Miller Report at 6).

The possibility of intermittent irritability from her Adjustment Disorder is insufficient to establish the first step of Myers's prima facie burden. "[T]he word 'substantial' clearly . . . precludes impairments that interfere in only a minor way with the performance of [the major life activity] from qualifying as disabilities." *Black v. Roadway Express, Inc.*, 297 F.3d 445, 451 (6th Cir. 2002) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (second alteration in original)). The intermittent irritability that Myers might have experienced from her Adjustment Disorder if she remained in her existing employment location appears to be exactly the sort of minor interference with a major life activity that the Supreme Court views as falling short of the definition of a disability under the ADA. Furthermore, the Court stated that it is insufficient for individuals attempting to establish that they are disabled under the ADA "to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Toyota Motor Mfg.*, 534 U.S. at 198 (internal quotation marks omitted) (alterations in original). Myers misguidedly attempts to rely upon her Adjustment Disorder diagnosis alone as the basis for her claim that she is disabled under the ADA, and therefore allegedly entitled the reasonable accommodation of a job transfer. Myers has not offered any evidence about the limitations on her ability to work caused by her Adjustment Disorder, let alone that the impairment's effects were substantial. We AFFIRM the district court's conclusion that Myers has failed to establish that she

8

is disabled as defined by the ADA, and therefore she is unable to defeat Cuyahoga County's motion for summary judgment on her ADA claim.

## B. Myers's Race-Discrimination Claim

Myers also claims that she was terminated in violation of Title VII and Ohio law[3] because she is white (rather than Hispanic) and is non-Spanish speaking. The district court granted summary judgment to Cuyahoga County because it held that Myers had not established a prima facie case of reverse race discrimination. In order to establish a prima facie case of discrimination, Myers must show that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she experienced an adverse employment action; and (4) she was replaced by a person outside the protected class or she was treated differently than a similarly situated non-protected employee. *See Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). In reverse-discrimination cases, in order to establish the first step, a plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (internal quotation marks omitted).

The district court found Myers's prima facie case lacking at the fourth step because it correctly concluded that Myers had not addressed whether Cuyahoga County treated differently employees who were similarly situated but not members of Myers's protected class. The district court failed to consider, however, that Myers could also establish the fourth step of her prima facie

---

[3]Under Ohio law, Myers's race and sex discrimination claims under Ohio Revised Code § 4112 are analyzed according to the same standards used to analyze federal discrimination claims under Title VII. *See, e.g., Cincinnati Bar Ass'n. v. Young*, 731 N.E.2d 631, 639 (Ohio 2000) (stating that it is the practice of the Ohio courts, "where appropriate, to refer to federal case law interpreting Title VII" when analyzing discrimination claims brought under O.R.C. § 4112).

9

burden by showing that she was replaced by someone who was outside her protected class. *See Newman*, 266 F.3d at 406. Considering that approach to the fourth step of her prima facie burden, we conclude that Myers has put forth a prima facie case of reverse race discrimination. First, Myers has presented background circumstances that support her suspicion that Cuyahoga County discriminated against non-Hispanics. Father Ziemba testified at his deposition that "Mr. Vazquez and Mrs. Caraballo were working very diligently to try to have a basically Hispanic welfare office to meet the needs of the Hispanic community in that part of Cleveland." J.A. at 353-54 (Ziemba Dep. at 22-23). Ziemba also stated that in their efforts "to get this Hispanic office going," Vazquez and Caraballo "tended to be over zealous." J.A. at 354 (Ziemba Dep. at 23). Next, the parties do not dispute that Myers was qualified for her position or that she experienced the adverse employment action of being terminated. Finally, Myers has established the fourth step because she claims, both in her complaint and her appellate brief, that she was "replaced by a Hispanic, Spanish-speaking employee" — a fact that has not been disputed by Cuyahoga County. J.A. at 22 (Compl. at ¶ 5); Appellant Br. at 11.

As Myers has established a prima facie case of reverse race discrimination, the burden shifts to Cuyahoga County "to offer a legitimate, non-discriminatory reason for the adverse employment action at issue." *Leadbetter*, 385 F.3d at 690. The County has satisfied this burden by offering the legitimate, non-discriminatory reason of the numerous, well-documented disciplinary offenses that Myers committed. These disciplinary offenses were the result of many complaints by Myers's clients and co-workers about her insulting and unprofessional behavior, including her negative comments about people who are foreign-born. "Once the defendant has articulated a nondiscriminatory reason for its decision, the presumption of discrimination that arises from the

10

plaintiff's prima facie case disappears and the plaintiff must have the opportunity to show that the defendant's proffered explanation is merely a pretext for discrimination." *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 378 (6th Cir. 2002). Our court has recognized that a plaintiff can establish pretext in one of three ways. "To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (internal quotation marks omitted).

Myers has not shown that Cuyahoga County's proffered explanation is pretextual in any of these three ways. In the one page of her appellate brief devoted to her race-discrimination claim, Myers does not refute the County's stated reason for her termination nor does she point to any evidence that the County's claim that she was terminated because of her disciplinary problems was a pretext for discrimination because she is not Hispanic. Appellant Br. at 21. Although she alleges in her complaint that Caraballo solicited the complaints against her that resulted in the disciplinary offenses, Myers has not presented any evidence whatsoever to support this assertion. Myers has been unable to raise a genuine issue of material fact with respect to whether the proffered reason of her numerous disciplinary offenses is a pretext for unlawful race discrimination, and so we AFFIRM the district court's grant of summary judgment to Cuyahoga County on Myers's race-discrimination claim.

## C. Myers's Sex-Discrimination Claim

Myers's final claim on appeal is that the district court erred in granting summary judgment to Cuyahoga County on her sex-discrimination claim. Myers argues that Caraballo and Vazquez

sought her termination because she did not conform to their sex and gender stereotypes. Myers claims that the County either considered her

> to be a masculine woman who did not sufficiently conform to their expectations of what a woman should look and/or act like; or they suspected that she was originally born male and viewed her as a man who violated their expectations of persons born male by identifying as female, transitioning genders from male to female, and expressing a feminine personality and disposition.

J.A. at 23 (Compl. at ¶ 6). Myers transitioned to being a female person around 1973 or 1974, and so she had always been female while she was employed by Cuyahoga County. The County was aware that Myers was a transsexual, however, because during the initial hiring process with the County, Myers had explained that her many-year absence from the workforce and her name change were due to her sex change. As with her other claims, Myers did not conduct any discovery pertaining to her sex-discrimination claim, and relies only upon Cuyahoga County's deposition of Father Ziemba in which Ziemba stated that Myers's transsexualism was a topic of office gossip and that he once overheard a private conversation between Caraballo and Vazquez in either 1996 or 1997 in which Vazquez referred to Myers as a "he/she." J.A. at 347-50 (Ziemba Dep. at 16-19).

Title VII protects transsexual persons from discrimination for failing to act in accordance and/or identify with their perceived sex or gender. *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). "Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity." *Smith*, 378 F.3d at 575. Myers's prima facie burden for her gender nonconformity claim is the standard prima facie burden for Title VII plaintiffs claiming that they have been terminated as a result of illegal

12

discrimination. Myers must show that (1) she is a member of a protected class; (2) she experienced an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced by a person outside the protected class or she was treated differently than a similarly situated non-protected employee. *See Smith*, 378 F.3d at 570; *Newman,* 266 F.3d at 406.

In her appellate brief, Myers does not address whether or not she has established her prima facie burden, but rather she argues that the district court erroneously granted summary judgment to Cuyahoga County because it was requiring her to use "magic words" in her complaint and subsequent proceedings. Appellant Br. at 22. This is the incorrect legal standard for a plaintiff attempting to survive summary judgment. In order to defeat summary judgment, Myers, who had the opportunity to conduct discovery to develop her case but chose not to initiate discovery, must show that a genuine issue of material fact remains as to her sex-discrimination claim. From our review of the record, we conclude that Myers is unable to meet that burden.

The district court is correct that there is no dispute that Myers has satisfied the first three steps of her prima facie burden. The district court granted summary judgment to Cuyahoga County, however, because it concluded that Myers had failed to meet the fourth step of her prima facie burden because she had not shown that she was treated differently from similarly situated individuals outside the protected class. Again, the district court did not recognize that Myers could meet the fourth step by showing that she was replaced by person outside the protected class. *See Newman*, 266 F.3d at 406. However, Myers has not alleged, let alone provided any evidence showing, that she was replaced by a gender-conforming person. Furthermore, at oral argument, Myers's attorney admitted that she did not know whether or not Myers's replacement was gender-conforming. We will therefore assume for the sake of argument only that Myers's replacement was

13

gender-conforming and that she has met her prima facie burden. Nevertheless, we conclude that Myers has failed to demonstrate a genuine issue of material fact that Cuyahoga County's proffered non-discriminatory reason for terminating her — her plentiful disciplinary infractions — was a pretext for sex discrimination because she is gender-nonconforming.

As explained above, Cuyahoga County's articulated nondiscriminatory reason for terminating Myers is her well-documented history of disciplinary offenses. The burden then shifts back to Myers to show that this proffered reason is a pretext for illegal sex discrimination.

"'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated,' although such a showing might not '*always* be adequate to sustain a jury's finding of liability.'" *Weigel*, 302 F.3d at 378 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000)). Unfortunately for Myers, she has failed to produce sufficient evidence to create a genuine issue as to pretext. Myers has been unable to show either that the County's articulated reason of her disciplinary offenses has no basis in fact, that the disciplinary offenses did not actually motivate the County's decision to discharge her, or that the disciplinary infractions are insufficient to motivate her discharge. *See Manzer*, 29 F.3d at 1084.

The only evidence in the record that could be considered evidence of pretext is Father Ziemba's deposition testimony that he once heard Vazquez, when speaking privately to Caraballo, refer to Myers as a "he/she." J.A. at 347-50 (Ziemba Dep. at 16-19). At oral argument, Myers relied entirely upon this incident to support her sex-discrimination claim. We agree with Myers that calling a transsexual or transgendered person a "he/she" is a deeply insulting and offensive slur, and we agree that using that term is strongly indicative of a negative animus towards gender

nonconforming people. In the context of all the evidence in this case, however, we cannot conclude that the statement by itself is sufficient to create a jury question on the issue of pretext. The "he/she" incident is the only incident Myers proffers as proof of pretext. That isolated remark was remote in time from Myers's termination — the remark was made sometime in 1996 or 1997, several years before the problems with Myers's performance in late 1998 and 1999 that led to her disciplinary offenses and ultimately her termination — and there is no evidence that the remark was related to Cuyahoga County's decision to terminate her. *See Weigel*, 302 F.3d at 379.

Additionally, there is significant evidence to support Cuyahoga County's claim that the proffered reason for terminating Myers — that she was behaving in inappropriate and insulting ways towards her co-workers and clients — is credible and genuine. Had Myers been able to produce any evidence to call into question the legitimacy of Cuyahoga County's stated reason for firing her, perhaps by discovering some evidence that the disciplinary complaints against her were exaggerated or solicited by Caraballo, then that evidence in combination with the "he/she" comment might have been sufficient to raise a jury question on the issue of pretext. But Myers has not presented a shred of evidence to undermine the credibility of the County's explanation for her termination. Given the significant and unrebutted evidence of Myers's disciplinary problems, the isolated "he/she" remark, without more, is not sufficient to create a jury question as to pretext. Myers is unable to defeat Cuyahoga County's motion for summary judgment, and so we AFFIRM the district court's grant of summary judgment on her sex-discrimination claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Cuyahoga County on all of Myers's claims.

15