[Cite as *Vogel v. N.E. Ohio Media Group, L.L.C.*, 2023-Ohio-176.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STEVEN VOGEL

    Appellant

    v.

NORTHEAST OHIO MEDIA GROUP,
LLC dba CLEVELAND.COM, et al.

    Appellees

C.A. No.     21CA0051-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    18CIV0232

DECISION AND JOURNAL ENTRY

Dated: January 23, 2023

TEODOSIO, Presiding Judge.

{¶1} Steven Vogel appeals a judgment of the Medina County Court of Common Pleas that granted summary judgment to Tameka Morris, Susan Haley, and the City of Medina ("the City") on his reverse gender discrimination, hostile work environment, and intentional infliction of emotional distress claims. This Court affirms.

I.

{¶2} Mr. Vogel began working for the City in 2000 and in 2011 became its chief building official. As part of his duties, Mr. Vogel oversaw multiple employees, including Ms. Morris and Ms. Haley, until Ms. Haley transferred to a different department. Mr. Vogel reported to the City's community development director, who reported to the mayor. Mr. Vogel lacked the authority to discipline or fire any of the employees he oversaw. Those actions would have had to have been approved by the community development director or the mayor.

2

{¶3}    According to Mr. Vogel, Ms. Morris and Ms. Haley never complained to him about any of his comments or behavior.  In November 2013, however, both women submitted sexual harassment complaints against him to the City's service director.  The service director forwarded the complaints to the law director, who began an investigation by talking with both women.  A few days later, Mr. Vogel was summoned to the mayor's office, where he was informed about the allegations and provided a copy of the women's written complaints.  The mayor informed Mr. Vogel that he had to be placed on administrative leave while an investigation occurred and had to relinquish his city-provided electronic devices, other equipment, and keys.  A couple of days later, Mr. Vogel met with the mayor again and provided a written response to the allegations.  Following the law director's investigation and additional meetings with Mr. Vogel, the mayor fired Mr. Vogel.

{¶4}    Believing that he would not have been terminated for his conduct if he were female, Mr. Vogel filed a complaint against the City, Ms. Morris, Ms. Haley, and others alleging reverse gender discrimination, hostile work environment, intentional infliction of emotional distress, libel, defamation, and false light invasion of privacy.  After the libel, defamation, and false light claims were dismissed as not being filed within the applicable statute of limitations period, the City, Ms. Morris, and Ms. Haley moved for summary judgment on the reverse gender discrimination, hostile work environment, and intentional infliction of emotional distress claims.  The trial court granted their motion.  Mr. Vogel has appealed, assigning three errors.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT IGNORED NUMEROUS GENUINE ISSUES OF
MATERIAL FACT IN GRANTING SUMMARY JUDGMENT TO APPELLEES
ON APPELLANT'S REVERSE GENDER DISCRIMINATION CLAIM.

**{¶5}** In his first assignment of error, Mr. Vogel argues that the trial court incorrectly granted summary judgment against him on his reverse gender discrimination claim. Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

**{¶6}** It is an unlawful discriminatory practice for any employer to "discharge without just cause, to refuse to hire, or otherwise discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment[,]" on the basis of sex.[1] R.C. 4112.02(A). "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. 4112." *Stipkala v. Bank One, N.A.*, 9th Dist. Summit No. 21986, 2005-Ohio-16, ¶ 10. A plaintiff

---

[1] In alleging reverse gender discrimination, it appears that Mr. Vogel is using the word "gender" interchangeably with "sex". Because the parties have not argued that the difference between those words has any significance in this case, we will adopt Mr. Vogel's nomenclature throughout this decision.

may demonstrate the existence of discriminatory practices with direct or indirect evidence. *Id*. at ¶ 11. In this case, Mr. Vogel sought to establish his disparate treatment with indirect evidence.

{¶7} "Ohio courts analyze discrimination claims which are based on indirect evidence under the framework provided by *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973).]" *Id*. at ¶ 14. Under that framework, "[t]o establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person." *Atkinson v. Akron Bd. of Edn.*, 9th Dist. Summit No. 22805, 2006-Ohio-1032, ¶ 28. A plaintiff may also satisfy the fourth prong by presenting evidence that he was treated differently than similarly situated non-protected employees. *Jones v. MTD Consumer Group., Inc.*, 9th Dist. Medina No. 13CA0093-M, 2015-Ohio-1878, ¶ 27. In cases alleging reverse discrimination, however, "the *McDonnell Douglas* test has been modified so that, 'in order to establish the first step, a plaintiff must demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Id*., quoting *Myers v. Cuyahoga Cty*, 182 Fed.Appx. 510, 517 (6th Cir.2006).

{¶8} Once a plaintiff creates a rebuttable presumption of discrimination by establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. *Id*. If the defendant satisfies its burden, the plaintiff must then prove that the proffered reason was a pretext to hide unlawful discrimination. *Id*. "To establish such pretext, a plaintiff must show either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." *Id*., quoting *Russell* at 604.

{¶9} The trial court determined that Mr. Vogel could not meet either the first or fourth elements of a prima facie case. As to the modified first element, it determined that Mr. Vogel did not present any background circumstances that suggested the City discriminates against male employees. As to the alternative fourth element, it determined that there was no evidence that the City had treated similarly situated female employees more favorably than Mr. Vogel.

{¶10} Regarding whether there are background circumstances from which it can be inferred that the City discriminates against non-minority employees, Mr. Vogel argues that Ms. Morris also engaged in inappropriate behavior, but only he was investigated and terminated for alleged misconduct. According to Mr. Vogel, Ms. Morris routinely called him "Baby Steve", discussed her personal life with him, and engaged in regular, inappropriate office joking and banter with him. Mr. Vogel also argues that Ms. Morris, Ms. Haley, and another female staff member colluded to bring the allegations of misconduct against him. He further argues that the law director's investigation of the allegations was a sham, with no interviews conducted or statements obtained from anyone who could contradict them.

{¶11} Upon review of the record, there is no evidence of background circumstances that suggests the City discriminates against male employees. According to Mr. Vogel, Ms. Morris reported to him, not the other way around, and he was responsible for her performance reviews. Regarding the office environment, at his deposition, Mr. Vogel related an occasion when the office was brainstorming ways to raise money for charity. He said that others were making lewd jokes, which is why he did not think his suggestion that some of the women wear very short shorts to the office was out of line. There is no indication, however, that the mayor, community development director, service director, law director, or other administrators were part of the discussion.

Regarding the law director's investigation, Mr. Vogel has not identified any other misconduct investigations that were conducted more thoroughly.

{¶12} Regarding whether the City treated Mr. Vogel differently than similarly situated employees, this Court has explained that, "[t]o demonstrate that someone is similarly situated to a plaintiff, the plaintiff must 'demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects.'" (Emphasis omitted.) *Jones*, 2015-Ohio-1878, ¶ 29, quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir.1998). "[T]o be deemed similarly-situated in the disciplinary context, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*, quoting *Palmer v. Potter*, 97 Fed.Appx. 522, 524-525 (6th Cir.2004). "In practical terms, two employees are not similarly-situated in all relevant respects if there is a meaningful distinction between them which explains their employer's differential treatment of them." *Id.*, quoting *Lindsay v. Children's Hosp. Med. Ctr. of Akron*, 9th Dist. Summit No. 24114, 2009-Ohio-1216, ¶ 38.

{¶13} The only co-worker to whom Mr. Vogel compares his treatment is Ms. Morris. According to Mr. Vogel, they both worked under the community development director and mayor and they were both subject to the same standards of work conduct, but only he was terminated for alleged misconduct that was sexual in nature.

{¶14} The most significant difference between Mr. Vogel and Ms. Morris is that no one filed a complaint against Ms. Morris so it is unknown how she would have been investigated by the law director or whether she also would have been terminated by the mayor for her alleged

misconduct. There are also significant differences in the severity of the misconduct allegedly committed by Mr. Vogel and Ms. Morris. Mr. Vogel alleges that Ms. Morris also engaged in inappropriate office banter and joking, but he has not pointed to any specific examples in the record. On the other hand, Mr. Vogel sent Ms. Morris an email suggesting that she could perform lap dances to persuade him to contribute to a birthday lunch collection. He also was alleged to have suggested that Ms. Haley and Ms. Morris wear short shorts to the office, recommended another time that Ms. Morris wear tight jeans and high heels to work, ogled Ms. Haley, smacked Ms. Morris on the buttocks with a gift he had received, smacked Ms. Haley on the buttocks with a file folder, invited female co-workers on dates, commented about the attire and appearance of female co-workers, attempted to massage Ms. Morris's shoulders, told Ms. Morris he had fantasized about her, asked to see Ms. Morris in a bikini, and became jealous when Ms. Morris went to events without him or received attention from other men. The behavior Mr. Vogel alleges that Ms. Morris engaged in did not involve the physical touching of others, leering, sexualizing of co-workers, or invitations to meet up outside of the office. She also did not have a supervisory role, unlike Mr. Vogel.

{¶15} Upon review of the record, we conclude that Mr. Vogel failed to establish the elements of a prima facie case of reverse gender discrimination because there is no evidence of background circumstances that suggests the City discriminates against male employees and because Ms. Morris and Mr. Vogel were not similarly-situated employees. The trial court, therefore, did not err when it determined that the City, Ms. Morris, and Ms. Haley were entitled to judgment as a matter of law on his reverse discrimination claim. Mr. Vogel's first assignment of error is overruled.

**ASSIGNMENT OF ERROR TWO**

THE TRIAL COURT IGNORED NUMEROUS GENUINE ISSUES OF MATERIAL FACT IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON APPELLANT'S HOSTILE WORK ENVIRONMENT CLAIM.

{¶16}   In his second assignment of error, Mr. Vogel argues that the trial court incorrectly granted summary judgment to the City, Ms. Morris, and Ms. Haley on his hostile work environment claim.

> [T]o establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169 (2000), paragraph two of the syllabus.  "Harassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex."  *Id*. at paragraph four of the syllabus.  On the other hand, "harassment is not automatically discrimination because of sex merely because the words used have sexual content or connotations."  *Id*.

{¶17}    In its decision, the trial court focused on whether the City's investigation and Mr. Vogel's termination were because of Mr. Vogel's gender.  It concluded that the evidence, construed in Mr. Vogel's favor, did not support his claim that he was the subject of Ms. Morris's and Ms. Haley's complaints, the City's investigation, the mayor's discipline, or any hostile work environment because of his gender.

{¶18}   Mr. Vogel argues that it was the way the complaints against him were handled and the City's failure to conduct a legitimate investigation that are at issue.  According to Mr. Vogel,

the law director did not act in good faith when he investigated the complaints. Instead, he wrongfully believed that only women can be sexually harassed and failed to note any evidence that contradicted the women's claims. Mr. Vogel also argues that routinely being called "Baby Steve" by Ms. Morris, listening to her complaints about being hit on by contractors, and hearing the intimate details of her personal life was objectionable.

{¶19} The law director testified at his deposition that he spoke with both Ms. Haley and Ms. Morris about their complaints and interviewed Mr. Vogel afterwards. During his interview with Mr. Vogel, the law director concluded that Mr. Vogel was not being completely credible because Mr. Vogel was adamant that nothing had happened even though some things clearly had, such as the request for lap dances. The law director also interviewed five others who Ms. Haley or Ms. Morris had said might be able to corroborate their allegations or who the women had talked to about their difficulties with Mr. Vogel. Because some of those witnesses no longer worked for the City, the law director only spoke to them over the telephone and did not get written statements from them. According to the law director, he also asked Mr. Vogel if there was anyone he should talk to about the allegations but Mr. Vogel told him there was not. He also reviewed a written statement Mr. Vogel submitted disputing the allegations before preparing his report to the mayor.

{¶20} Mr. Vogel has not pointed to any evidence in the record that any of the unwelcome behavior he allegedly endured was directed at him because he is male. Mr. Vogel merely speculates that the law director believes that only women may be targets of sexual harassment. He acknowledged that the law director was required to investigate after Ms. Morris and Ms. Haley filed complaints against him, and he has not identified any witnesses he asked the law director to speak to about the allegations who were not interviewed. As far as whether Mr. Vogel experienced any unwelcome conduct outside of the investigation, he testified that he was accustomed to

bantering with his co-workers from his days working construction and thought that he had a great working relationship with Ms. Morris that was jokey and fun. While Ms. Morris would call Mr. Vogel "Baby Steve" in her emails to him, he would refer to her as "little momma" in his replies.

**{¶21}** Upon review of the record, we conclude that the trial court did not err when it concluded that Mr. Vogel could not establish the requirements for a hostile work environment claim. Mr. Vogel's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT IGNORED NUMEROUS GENUINE ISSUES OF MATERIAL FACT IN GRANTING SUMMARY JUDGMENT TO APPELLEES AS TO APPELLANT'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

**{¶22}** In his third assignment of error, Mr. Vogel argues that there were genuine issues of material fact regarding his claim for intentional infliction of emotional distress. He argues that the City, Ms. Morris, and Ms. Haley knew or should have known that making false allegations of sexual harassment against him, conducting a sham investigation, placing him on administrative leave without proof of the allegations, providing an "anonymous tip" to the media that misrepresented that he had been escorted from city hall by police, stripping him of the electronic devices he needed to defend himself from the allegations, and terminating him without justification would result in serious emotional distress to him.

**{¶23}** To establish

a claim for intentional infliction of emotional distress, a plaintiff must prove that: "(1) [t]he defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community, (3) the defendant's actions proximately caused psychic injury to the plaintiff, and (4) the plaintiff suffered serious mental anguish of the nature no reasonable man could be expected to endure."

*Shetterly v. WHR Health Sys.*, 9th Dist. Medina No. 08CA0026-M, 2009-Ohio-673, ¶ 15, quoting

*Rigby v. Fallsway Equip. Co. Inc.*, 150 Ohio App.3d 155, 2002-Ohio-6120, ¶ 48 (9th Dist.). It is

not enough that a defendant "acted with an intent which is tortious or even criminal, or that he has

intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,'

or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."

*Rigby* at ¶ 50, quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983). "The injury

must be of such a magnitude that a reasonable person would be unable to cope with the mental

distress created by the circumstances of the case." *Id*. at ¶ 51.

{¶24} Mr. Vogel argues that the allegations of sexual harassment were false, but there

was documented evidence that Mr. Vogel suggested that Ms. Morris perform lap dances to

convince him to contribute to a birthday lunch fund. He argues that the investigation was a sham,

but he did not ask the law director to interview anyone else while the investigation was occurring.

He argues that he was placed on administrative leave even though there was no evidence to

substantiate the accusations against him, but he acknowledged at the time that the City was

required to impose a separation between him and his accusers. He argues that there was an

anonymous tip to the media regarding the situation, but there is no evidence indicating who

provided the tip. Mr. Vogel also argues that he was deprived of his cell phone and access to his

work emails during the investigation, but he acknowledged at his deposition that he bought a cell

phone for himself almost immediately after being placed on leave and there is no indication that

he asked the law director or mayor for access to his work emails during the course of the

investigation. Even assuming the City, Ms. Morris, and Ms. Haley knew that terminating Mr.

Vogel would result in serious emotional distress to him, their conduct was not so extreme and

outrageous that it went beyond all possible bounds of decency. Upon review of the record, we

conclude that the trial court did not err when it granted summary judgment to the City, Ms. Morris, and Ms. Haley on Mr. Vogel's claim for intentional infliction of emotional distress. Mr. Vogel's third assignment of error is overruled.

### III.

**{¶25}** Mr. Vogel's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

NATALIE F. GRUBB and MARK E. OWENS, Attorneys at Law, for Appellant.

GREGORY A. BECK and ANDREA K. ZIARKO, Attorneys at Law, for Appellees.